---

**REBECCA LEMKE**
4540 N. Woodruff Ave.
Shorewood, WI  53211

      Plaintiff,

  **v.**

**SALS RECOVERY CENTER LLC**
d/b/a WisHope Recovery Center
223 Wisconsin Avenue, Suite A
Waukesha, Wisconsin 53186

    and

**Unknown SALS Employees**
223 Wisconsin Avenue, Suite A
Waukesha, Wisconsin 53186

    Defendants.

**Case No.: 26-cv-483**
JURY TRIAL DEMANDED

---

## COMPLAINT

---

COMES NOW the Plaintiff, Rebecca Lemke, by her attorneys, Padway & Padway, Ltd., by Attorney Aaron DeKosky, and as and for a claim against Defendants, alleges and shows the Court as follows:

### JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA").

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves claims under Wisconsin's Wage Payment and Collection Laws ("WWPCL"), Wis. Stat. §§ 109.01 et seq., and these claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants reside and/or operate their business in the Eastern District of Wisconsin and the unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin.

## PARTIES

4. Plaintiff, Rebecca Lemke ("Lemke"), is an adult resident of the State of Wisconsin with an address in 4540 N. Woodruff Ave., Shorewood, WI 53211.

5. Defendant, SALS Recovery Center LLC, doing business as WisHope Recovery Center (hereinafter "Defendant Company"), is a Wisconsin limited liability company with its principal place of business at 223 Wisconsin Avenue, Suite A, Waukesha, Wisconsin 53186.

6. Defendant Company was founded in 2016 and operates a substance abuse and behavioral health treatment organization that provides residential inpatient treatment, medical detoxification, outpatient services, sober living housing, clinical services, peer recovery coaching, and intake coordination through multiple facilities across the State of Wisconsin.

7. Defendant Company operates facilities and provides services in Waukesha, Brookfield, Milwaukee, Kenosha, and Madison, Wisconsin, as well as a 60-bed residential facility known as "Woods Crossing" in Brodhead, Wisconsin, a 10-bed residential facility known as "The Grove," sober living residences, and a facility known as "Solaris."

8. Defendant Company is accredited by The Joint Commission, the nation's oldest and largest standards-setting and accrediting body in healthcare. Defendant Company's programs are aligned with the Substance Abuse and Mental Health Services Administration's ("SAMHSA") National Registry of Evidence-based Treatment Programs and Practices.

9. During the relevant time periods as stated herein, Defendant Company employed more than two employees across its various facilities.

10. During the relevant time periods as stated herein, Defendant Company was engaged in "commerce" and/or its employees were engaged in "commerce" or in the production of goods for commerce, as those terms are defined under the FLSA, 29 U.S.C. § 203(b), (i), and (j).

11. Defendant Company accepts payment from numerous national and interstate insurance carriers, and regularly processes insurance claims, communications, and payments across state lines. Defendant Company also accepts Medicare and Medicaid, which are federally funded healthcare programs.

12. Defendant Company's employees regularly communicated by telephone and electronic means with insurance carriers, referral sources, patients, and family members located outside the State of Wisconsin in the performance of their duties.

13. During the relevant time periods as stated herein, Defendant Company's annual gross volume of sales made or business done exceeded $500,000, and Defendant Company therefore constituted an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

14. Unknown supervisory employees SALS employees who had direction and control of Defendant's policies and/or the ADP timekeeping system, and knew or should have known that Lemke's time should have been adjusted in the ADP timekeeping system to reflect the additional time that Lemke worked, should have ensured the Lemke's ADP time accurately reflected her working hours.

15. During the relevant time periods as stated herein, Defendant Company was an "employer" as that term is defined under the FLSA, 29 U.S.C. § 203(d), and the WWPCL.

16. During the relevant time periods as stated herein, Lemke was "employed" by and/or an "employee" of Defendant Company as those terms are defined under the FLSA, 29 U.S.C. § 203(e), and the WWPCL.

**FACTS**

17. Defendants hired Lemke approximately September 2023.

18. From approximately September 2023 to approximately May 2024, Lemke held the position of Housing Manager at one of Defendant Company's sober living residences.

19.     In her position as Housing Manager, Lemke's duties included managing and overseeing a sober living residence, coordinating housing placements, and facilitating housing transfers as directed by clinical and operations staff.

20.     From approximately May 2024 to approximately May 2025, Lemke held the position of Lead Behavioral Health Technician at Defendant Company's 10-bed residential facility known as "The Grove."

21.     In her position as Lead Behavioral Health Technician, Lemke worked eight-hour shifts and performed duties including direct patient care and behavioral health support at The Grove.

22.     From approximately May 2025 until her termination on or about March 13, 2026, Lemke held the position of Intake Specialist and Transition Coordinator.

23.     Despite holding the title of Intake Specialist and Transition Coordinator, Lemke was never provided a written job description for this role.

24.     In her position as Intake Specialist and Transition Coordinator, Lemke's actual duties substantially exceeded any reasonable scope for that title.

25.     Her duties included, but were not limited to: intake coordination for new patients, housing facilitation and placement, insurance verification and communication with insurance carriers, clinical support, staffing coordination, checking and responding to faxes, replying to work emails, coordination of operations at Defendant Company's 60-bed Woods Crossing residential facility in Brodhead, Wisconsin, and various other administrative and operational tasks as assigned by multiple supervisors.

26. Lemke reported to and received direction from, among others, Mark Palazzari (Operations Director), Jessica Degner (Clinical Director), Kevin Hamm (Compliance Director), and Ryan Schneider.

27. From the start of Lemke's employment with Defendant Company until on or about November 2, 2025, Defendants compensated Lemke on an hourly basis.

28. During the period of Lemke's hourly employment, the Defendant Company recorded her hours worked through Defendant Company's ADP electronic timekeeping system.

29. During her hourly employment, Lemke's normal or customary work schedule was generally from approximately 7:30 a.m. to approximately 4:00 p.m. at Defendant Company's facilities.

30. Lemke clocked into the ADP timekeeping system upon arriving at the workplace and clocked out upon leaving.

31. Throughout Lemke's employment, Defendant Company's supervisory personnel regularly contacted Lemke outside of her normal working hours via telephone calls and text messages, directing her to perform work-related tasks.

32. During Lemke's employment with Defendant Company, she performed compensable work at the express direction of Defendant Company's management and supervisory personnel outside of her normal working hours at the direction of Defendant Company's supervisory personnel, for which she was not compensated.

33. Lemke commuted from Waukesha, Wisconsin to Defendant Company's facilities, and during her commute, Lemke regularly performed compensable work by

engaging in work-related telephone calls initiated by or at the direction of Defendant Company's supervisory personnel, for which she was not compensated.

34. Lemke was frequently directed to work through her lunch period, and she was not compensated for her work.

35. Lemke was contacted by Defendant Company's supervisory personnel for work-related purposes after her normal working hours on a routine basis. These after-hours contacts ranged in duration from approximately ten (10) minutes to several hours per occurrence.

36. The work-related tasks Lemke was directed to perform outside of her normal working hours included, but were not limited to: facilitating changes in level of care for patients; coordinating emergency housing switches and placements; handling intake-related matters; responding to insurance inquiries; checking faxes; replying to work emails; addressing clinical staffing questions; and coordinating operations at Defendant Company's Woods Crossing 60-bed residential facility in Brodhead, Wisconsin.

37. Lemke's wireless telephone records and text message logs corroborate and document the pattern of work-related communications initiated by Defendant Company's supervisory personnel outside of Lemke's normal working hours, for which she was not compensated.

38. The pattern of after-hours calls documented in Lemke's telephone records reflects the nature of the off-the-clock work Defendants directed her to perform. When calls from Rory Pettine (Housing Manager) and Jessica Degner (Clinical Director)

coincided outside of working hours, this indicated a clinical incident requiring an emergency housing transfer, which Lemke was directed to facilitate. When calls from Shameeka Martin (Operations Director of Woods Crossing) and Kevin Hamm or Jessica Degner coincided outside of working hours, this indicated an operational issue at the 60-bed residential facility that Lemke was directed to resolve.

39. During the period when Lemke was compensated on an hourly basis (prior to approximately November 2, 2025), Lemke did not clock in for—and as a result was not compensated for—the substantial work she performed outside of her normal working hours at the direction of Defendant Company's supervisory personnel.

40. The Company did not add Lemke's after-hours time to Lemke's hours in the ADP timekeeping system.

41. Defendants knew or should have known that Lemke was performing compensable work outside of her normal working hours because such work was performed at the express direction of, and was initiated by, Defendant Company's own management and supervisory personnel.

42. Defendants suffered or permitted Lemke to perform this off-the-clock work without compensating her for all hours worked.

43. During Lemke's employment with Defendant Company, Defendants failed to compensate Lemke for compensable work performed outside of her normal working hours each workweek.

44. During Lemke's employment with Defendant Company, Defendants suffered or permitted her to work without appropriately or lawfully compensating her

for all hours worked in a workweek, including, but not limited to, at an overtime rate of pay of one and one-half times her regular rate for each hour worked in excess of forty (40) hours in a workweek.

45. During Lemke's employment with Defendant Company, Defendants did not compensate her at an overtime rate of pay for hours she worked in excess of forty (40) in said workweeks.

46. During Lemke's employment with Defendant Company, her paychecks did not properly or lawfully compensate her for all hours she worked in a workweek.

47. During Lemke's employment with Defendant Company, her paychecks did not properly or lawfully compensate her at an overtime rate of pay for hours she worked in excess of forty (40) in a workweek.

48. Upon information and belief, Defendants failed to make, keep, and preserve accurate records of the hours Lemke worked each workday and each workweek, as required by 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

49. Defendants' ADP timekeeping records do not reflect the substantial off-the-clock hours that Lemke worked at the direction of Defendants' supervisory personnel.

50. On or about November 2, 2025, Defendants converted Lemke's compensation to a salaried basis at a rate of $2,000.00 gross per biweekly pay period, nominally reflecting 80 hours of work per pay period.

51. Defendants knew or should have known that Lemke was required to be compensated for all hours worked, and for all hours Defendants suffered or permitted her to work, in each workweek in accordance with the FLSA and the WWPCL.

52. Defendants knew or should have known that Lemke was required to be compensated at a rate of one and one-half times her regular rate of pay for each hour worked in excess of forty (40) hours in a workweek, in accordance with the FLSA and the WWPCL.

53. Defendant Company had a statutory duty to ensure compliance with the FLSA, including its minimum wage, overtime, and recordkeeping requirements.

54. Defendants owe Lemke earned and unpaid wages, including overtime compensation at one and one-half times her regular rate, for work performed during her employment with Defendant Company for which she was not properly or lawfully compensated, plus an equal amount in liquidated damages, in an amount to be determined at trial.

## FIRST CAUSE OF ACTION – FLSA VIOLATIONS
(Unpaid Wages and Overtime – 29 U.S.C. §§ 206, 207)

55. Lemke re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

56. Section 206(a)(1) of the FLSA requires employers to pay each of their employees a minimum wage for all hours worked.

57. Section 207(a)(1) of the FLSA requires employers to pay overtime compensation at a rate of not less than one and one-half times the employee's regular rate for each hour worked in excess of forty (40) hours in a workweek.

58. At all times material herein, Lemke was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 et seq.

59. At all times material herein, Lemke was a non-exempt employee entitled to overtime compensation under the FLSA.

60. Defendants violated Section 206 of the FLSA by failing to compensate Lemke for all hours worked, including substantial work performed outside of her normal working hours at the express direction of Defendant Company's supervisory personnel, and including work-related telephone calls and communications during her commute.

61. Defendants violated Section 207 of the FLSA by failing to compensate Lemke at a rate of one and one-half times her regular rate of pay for each hour she worked in excess of forty (40) hours in a workweek.

62. Defendants violated 29 U.S.C. § 211(c) by failing to make, keep, and preserve adequate and accurate records of Lemke's hours worked each workday and total hours worked each workweek, as required by 29 C.F.R. § 516.2.

63. Defendants' failure to properly and lawfully compensate Lemke for all compensable work performed was willful.

64. Defendants knew that their supervisory personnel were directing Lemke to perform work outside of her normal hours on a daily basis, and Defendants made no effort to record or compensate such time

65. Defendants have neither acted in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA.

66. As a result of Defendants' willful violations, Lemke is entitled to recover an award of liquidated damages in an amount equal to the unpaid wages and overtime premium pay owed to her, pursuant to 29 U.S.C. § 216(b).

67. Alternatively, should the Court find that Defendants acted reasonably and in good faith, Lemke is entitled to an award of pre-judgment interest at the applicable legal rate.

68. Because Defendants' violations were willful, the applicable statute of limitations is three (3) years preceding the date of filing of this Complaint, pursuant to 29 U.S.C. § 255(a), plus any periods of equitable tolling warranted by Defendants' wrongful conduct in preventing Lemke from asserting her claims.

69. Pursuant to 29 U.S.C. § 216(b), Lemke is entitled to recover reasonable attorneys' fees and costs incurred in prosecuting this action.

### SECOND CAUSE OF ACTION – WWPCL VIOLATIONS
(Unpaid Wages and Overtime – Wis. Stat. §§ 109.01 et seq., 103.01 et seq.)

70. Lemke re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

71. At all times material herein, Lemke was an employee of Defendants within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. § 103.001(5), and Wis. Stat. § 104.01(2)(a).

72. At all times material herein, Defendants were employers of Lemke within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. § 103.001(6), Wis. Stat. § 104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

73. At all times material herein, Defendants employed Lemke within the meaning of Wis. Stat. §§ 109.01 et seq., 103.01 et seq., 104.01 et seq., and Wis. Admin. Code § DWD 272.01.

74. During Lemke's employment with Defendants, she performed compensable work outside of her normal working hours at the express direction of Defendants' supervisory personnel, for which she was not compensated.

75. During Lemke's employment with Defendants, she worked hours in excess of forty (40) per workweek for which she was not compensated at a rate of one and one-half times her regular rate of pay.

76. Defendants willfully violated the WWPCL by failing to compensate Lemke for all hours worked and by failing to pay overtime compensation at a rate of one and one-half times her regular rate for each hour of overtime worked.

77. During Lemke's employment, Defendants unlawfully failed to compensate her for numerous hours of off-the-clock compensable work performed each workweek at the direction of Defendants' supervisory personnel, including but not limited to daily after-hours telephone calls and text message communications ranging from ten (10) minutes to several hours in duration per occurrence.

78. At all times material herein, Lemke regularly performed activities that were an integral and indispensable part of her principal activities without receiving compensation, including compensation at an overtime rate of one and one-half times her regular rate.

79. The foregoing conduct constitutes willful violations of the WWPCL.

80. As a proximate result of Defendants' violations, Lemke sustained losses in the form of unpaid wages and overtime compensation.

81. Accordingly, Lemke seeks damages in the amount of her unpaid compensation, injunctive relief requiring Defendants to cease and desist from their violations of the Wisconsin laws described herein, and such other legal and equitable relief as the Court deems just and proper.

82. Pursuant to Wis. Stat. § 109.11(2), Lemke is entitled to recover an additional amount as liquidated damages equal to fifty percent (50%) of the unpaid wages.

83. Lemke seeks recovery of reasonable attorneys' fees and costs of this action to be paid by Defendants, pursuant to the WWPCL.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Order Defendants, jointly and severally, to pay Plaintiff all unpaid wages, including overtime compensation, and pre-judgment and post-judgment interest thereon, for all compensable work for which she was not properly paid, as provided by the FLSA and the WWPCL;

2. Grant Plaintiff an award of liquidated damages pursuant to 29 U.S.C. § 216(b) in an amount equal to the unpaid wages and overtime compensation owed, or in the alternative grant Plaintiff an additional award of liquidated damages pursuant to Wis. Stat. § 109.11(2) in an amount equal to fifty percent (50%) of the unpaid wages;

4. Grant Plaintiff reasonable attorneys' fees, costs, and disbursements as provided by 29 U.S.C. § 216(b) and the WWPCL;

5. Grant injunctive relief requiring Defendants to comply with the FLSA and WWPCL, including their recordkeeping obligations; and

6.    Grant Plaintiff such other and further relief as this Court deems just, equitable, and proper.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL TRIABLE ISSUES.**

Dated at Milwaukee, Wisconsin this March 25, 2026.

Respectfully submitted,
PADWAY & PADWAY, LTD.

By:  /s/ *Aaron A. DeKosky*      .

Aaron DeKosky
SBN: 1081404

**P.O. Address:**
Padway & Padway, Ltd.
5150 N. Port Washington Rd.
Suite 151
Milwaukee, WI  53217
www.padwaylaw.net

Phone:  (414) 277-9800
Fax:     (414) 277-0189
adekosky@padwaylaw.net